IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
SAN ANGELO DIVISION

DIANA S. LARA, §
§
      Plaintiff, §
§
v. § Civil Action No. 6:16-CV-00062-BL
§
§
NANCY A. BERRYHILL, §
Acting Commissioner of Social Security, §
§
      Defendant §

## MEMORANDUM ORDER AND OPINION

Pursuant to 42 U.S.C. § 405(g), Diana Lara seeks judicial review of the Commissioner of Social Security, who denied her application for disability insurance benefits under Title II of the Social Security Act. This case was assigned to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Doc. 7). The parties consented to proceed before a United States Magistrate Judge. (Doc. 13). After considering all the pleadings, briefs, and administrative record, this Court finds that the decision of the Commissioner is not based on legal error or unsupported by substantial evidence, is therefore affirmed, and Lara's case is dismissed.

### I. STATEMENT OF THE CASE

Lara filed an application for DIB on June 28, 2013, alleging impairments that were disabling as of April 12, 2013.[1] That application was denied initially on June 28, 2013 and after reconsideration on January 27, 2014. Lara requested a hearing, which was held before an

---

[1] Plaintiff argues that the ALJ incorrectly determined she amended this onset date. The undersigned disagrees with this analysis, as explained below.

Administrative Law Judge on June 16, 2015. The ALJ issued a decision on July 17, 2015 finding Lara not disabled.

Specifically, the ALJ found during step one that Lara had not engaged in any substantial gainful activity since April 12, 2013. (Doc. 12-3, 18). At step two, the ALJ determined Lara had the impairments of osteoarthritis and major depressive disorder at the date of last insurance. (Doc. 12-3, 18). However, the ALJ decided those impairments were not severe under the regulations and that Lara therefore had no severe impairments during the insured period. (Doc. 12-3, 18). Accordingly, he held that she "was not under a disability ... [between] the alleged onset date [and] the date last insured." (Doc. 12-3, 22). Lara applied to the Appeals Council, which denied review on September 30, 2016. Therefore, the ALJ's ruling is the Commissioner's final decision and is properly before the court for review. *Higginbotham v. Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005) ("[t]he Commissioner's final decision includes the Appeals Council's denial of [a claimant's] request for review.").

## II. FACTUAL BACKGROUND

According to her pleadings, testimony at the administrative hearing, and the administrative record, Lara was 51 years old and living with her husband and two teenaged children at the time of the administrative hearing. Her previous employment consisted of administrative and secretarial work in medical environments.

## III. STANDARD OF REVIEW

A person is disabled if she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 1382(c)(a)(3)(A), 423 (d)(1)(A) (2012). "'Substantial gainful activity' is

work activity involving significant physical or mental abilities for pay or profit." *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002); 20 C.F.R. § 404.1572(a)-(b).

To evaluate a disability claim, the Commissioner follows a "five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity." *Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007); *see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of showing [she] is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler*, 501 F.3d at 448. The Commissioner must assess a claimant's residual functional capacity before proceeding to steps 4 and 5. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). Regulations define RFC as "the most [a claimant] can still do despite [their] limitations." 20 C.F.R. § 416.945(a)(1).

This Court's review of the Commissioner's decision to deny disability benefits is limited to an inquiry into whether substantial evidence supports the Commissioner's findings and whether the Commissioner applied the proper legal standards. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002) (citing *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000)). Substantial evidence "is more than a mere scintilla and less than a preponderance" and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000); *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002). If substantial evidence supports the Commissioner's findings, then the findings are conclusive

and the Court must affirm the Commissioner's decision. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Newton*, 209 F.3d at 452.

The Court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for the Commissioner's even if the Court believes the evidence weighs against the Commissioner's decision. *Masterson*, 309 F.3d at 272. Moreover, "[c]onflicts in the evidence are for the Commissioner and not the courts to resolve." *Newton*, 209 F.3d at 452.

## IV. DISCUSSION

Lara raises four issues on appeal. She believes the ALJ improperly considered a retrospective opinion from a treating physician, erred in finding fewer severe impairments than a state agency consulting physician, failed to properly consider a third-party function report from her husband, and inappropriately limited the timeframe considered.

### Retrospective diagnosis by treating physician

Lara believes the opinion offered by her treating physician, Dr. Wimpee, shows her eligible for benefits before the date of last insurance. (Doc. 15, 5). Specifically, she takes issue with the ALJ's finding that a RFC assessment completed by Dr. Wimpee two years after her date of last insurance, and other factors contributing to Dr. Wimpee's opinion, were given diminished weight as contradictory with records more contemporaneous to the doctor visits.

"[W]hile retrospective medical diagnoses may constitute relevant evidence of the onset of disability, they must at least by corroborated by lay evidence relating back to the claimed period of disability." *Luckey v. Astrue*, 458 Fed. App'x 322, 326 (5th Cir. 2011) citing *Likes v. Callahan*, 112 F.3d 189, 191 (5th Cir. 1997) (*per curiam*). Furthermore,

> While a retrospective opinion can prove the existence of a disability, the retrospective opinion must refer clearly to the relevant period of disability and not simply express an opinion to the claimant's current status. Records describing a claimant's current condition cannot be used to support a

4

> retrospective diagnosis of disability absent evidence of an actual disability during the time of insured status.

*McLendon v. Barnhart*, 184 Fed. App'x 430, 432 (5th Cir. 2006). So, Lara must show that there is no substantial evidence supporting a finding that the retrospective opinion offered in 2015 about her capacity for work in 2013 did not support a finding of disability during the insured period.

The entire portion of the ALJ's decision referring to Dr. Wimpee and his evidence reads:

> I also considered the testimony given at [the] hearing, particularly that of Dr. Wimpee. Specifically, Dr. Wimpee testified that the claimant has been disabled since April 12, 2013, as a result of her rheumatoid arthritis. However, after Dr. Wimpee was confronted with his own medical records at that time, he admitted that he had only treated the claimant for knee pain at that time. Accordingly, it appears Dr. Wimpee's recollection of his treatment with the claimant is questionable at best, which I find raises questions regarding the credibility of his testimony overall. I also note that Dr. Wimpee testified he was a retired orthopedic surgeon, which is not a rheumatologist or auto immune disease specialist. As such, his opinion regarding the severity or presence of the claimant's alleged rheumatoid arthritis is also in question, which further erodes his credibility regarding the claimant's functional capacity. Furthermore, I note that Dr. Wimpee completed a residual functional capacity document on behalf of the claimant, which indicated the claimant was limited to a significantly less than sedentary functional capacity. However, when asked to support the limitations described in the document, Dr. Wimpee cited the claimant's clinical rheumatoid arthritis and auto immune thyroiditis, both of which were not present from her amended alleged onset of disability through her date last insured. Moreover, Dr. Wimpee's opinion was completed in 2015, nearly two years after the claimant's date last insured. As such, I have given very little weight to Dr. Wimpee's opinion and testimony regarding the claimant's residual functional capacity from April 12, 2013 through June 30, 2013.

(Doc. 12-3, 20). The RFC document referred to in the ALJ's decision is a checkbox-style form on which Dr. Wimpee indicates numerous dramatic limitations such as inability to lift or carry even one pound for one-third of a standard eight hour shift, inability to either sit or stand or walk for two hours—but must be allowed to change sitting position every 5-10 minutes, change standing position every 0-5 minutes, and walk around every 5-10 minutes for 5-10 minutes—, and must be

permitted to lie down 3-5 times per eight hour shift. (Doc. 12-10, 68-69). However, Dr. Wimpee does not refer to any medical records, instead simply attributing these severe limitations to "clinical rheumatoid arthritis (sero neg) [and] auto immune thyroiditis." (Doc. 12-10, 69).

Although Lara characterizes this assessment as a retrospective opinion describing her condition during some of the insured period, there is no evidence the assessment describes anything but her current condition. At the hearing, Dr. Wimpee testified that her condition in April 2013 was much worse than at the time of the administrative hearing, but his treatment notes from April 2013 do not support that assertion: he notes significant improvement in her right knee and records her report of unspecified "symptoms" in her neck, arm, and other joints. (Doc. 12-9, 73). That report also notes a self-complaint of pain at 6 out of 10 on an intensity scale and an intention to continue on her current oral medications. (Doc. 12-9, 74). Records from a week earlier do refer to injection of a painkiller, but specify it is for the knee which later improved. (Doc. 12-9, 80). Dr. Wimpee's notes from a May 2013 appointment refer to complete resolution of reported ankle pain, and notes from a June 2013 visit indicate a report of episodic and migratory pains but altered only her mental health medications. These records do not support Dr. Wimple's contention that, in April 2013, she could not either sit or stand or both for the majority of a standard workday or hold one pound for roughly three hours. An opinion which referred specifically to this time period and cited records would be provided some deference, but a checkbox completed two years later and which does not itself refer to any specific range of dates is not persuasive evidence.

Dr. Wimpee additionally authored a letter to the ALJ which opines that Lara's impairments meet "the criteria for Severe Cervical Degenerative Disc Disease, Autoimmune Disease, Rheumatoid Arthritis (Sero neg), and Hypothyroidism (Hashimoto's Disease)." (Doc. 12-10, 83). However, this letter is purportedly based on the exam notes described above, plus many other

sessions outside the range of insured dates. This letter does contend that Lara was unable to work since the date of Dr. Wimpee's first examination in April 2013, but does not allege which impairments he assessed at what point that the Commissioner might use to support a finding of disability. Although Lara would undoubtedly request the court read his offered opinion as containing the same limitations for the entire course of their treatment relationship, Dr. Wimpee himself believes her condition is fluid, as evidenced by his opinion that her condition was significantly worse in April 2013 than at the administrative hearing and the time of his purportedly retrospective opinion. Sincere though he may be in his belief Lara is not able to work, and was not able to in April through June of 2013, Dr. Wimpee's evidence was fully and fairly considered by the ALJ and determined to be insufficient to find a disability during the insured period. A decision on disability is an ultimate issue reserved to the Commissioner, and Dr. Wimpee's evidence is insufficient to find limitations establishing disability during the insured period. Put differently, Lara has failed to meet her burden of showing that she met the disability criteria during the insured period at the administrative stage, and has not shown now that such a finding is the result of legal error or unsupported by substantial evidence.

**Impairments assessed by state agency consultant**

Lara argues next that one of the state agency medical consultants assessed her with severe impairments, and the ALJ committed reversible error by not finding those same impairments were severe. (Doc. 15, 9-10). The ALJ considered the opinions of the consultants, but found they did not support a determination about Lara's impairments during the insured period. (Doc. 12-3, 21). Lara contends that the regulations require an ALJ to account for all impairments in an RFC, justify the weight assigned to medical opinions, consider all evidence available, and explain discounting evidence favorable to the claimant. (Doc. 15, 9-10). The ALJ here did all of these with respect to

the consultant's opinion, and Lara's argument that he must have erred in finding the impairments did not qualify as severe is misguided.[2] Lara has failed to show that the ALJ's treatment of the consultant's opinion is unsupported by substantial evidence or contrary to the applicable legal standards.

**Third-party function report**

Lara also criticizes the ALJ opinion for failing to discuss the third-party function report prepared by Lara's husband. (Doc. 15, 10). The Commissioner argues that any such error is harmless. (Doc. 16, 9). To the extent that this third-party report assesses Lara's capability, it is much more positive about the limits of Lara's ability than the opinion provided by Dr. Wimpee. For example, Lara's husband reports that she is able to drive herself, lift things under 10 pounds without assistance, walk for two blocks without needing to stop, stand for about 30 minutes, and shift positions when sitting for more than one hour. (Doc. 12-7, 26-28). Although such a report should have been considered explicitly by the ALJ in his opinion, because the limitations described are significantly more lenient than the restrictions assessed by medical professionals the Commissioner's position that this error is harmless is credible. There are also no dates attached to any lost ability to do any or all of the things described in the report, leading to similar issues about finding a disability within the insured period as described in the sections above.

**Appropriate timeframe**

Finally, Lara argues that the ALJ improperly decided she had amended her onset date, and that the proper period for consideration is from April 1, 2010 through the date of last insurance on June 30, 2013. (Doc. 15, 11). The transcript of the hearing indicates Lara's representative stated

---

[2] Lara also mischaracterizes the ALJ's opinion. Lara quotes him as assigning great weight to the consultant's opinion, but neglects to include that the ALJ explicitly granted such weight "only insofar as it supports the conclusion that the claimant's impairments are 'non-severe.'" (Doc. 12-3, 21). Also, the ALJ did not establish an RFC, as he terminated his analysis at step two of the process outlined above.

"we'd be willing to amend to [the date of the first record provided by Dr. Wimpee], 4/12/2013." (Doc. 12-3, 35). Although Lara argues now this is not an actual request to modify the onset date but rather an indication of willingness to do so if it led to a finding of disability, this argument is incoherent: the April 2013 date is within the original consideration period, and so it is unclear what advantage might have been sought in proposing—but not actually requesting—a modification of the onset date.

The only plausible explanation for such a request also serves as reason to find that any error in finding an amendment of the onset date is harmless. In terms of records before April 2013, Lara provided only her own perceived need to cease work in April 2010 and cites only to a brief report of a January 25, 2011 physician visit which describes her as "doing pretty fair[,]" prescribes a medication which is used for both mental illness treatment as well as pain reduction, and advises a follow-up appointment in a month. (Doc. 12-9, 3). It stands to reason, then, that Lara's attorney at the hearing may have recognized a potential benefit in limiting the ALJ's focus to a sufficiently documented timeframe. Even if there were an error in amending the onset date, Lara did not meet her burden at the administrative stage of showing a disability during the longer period she now contends should have been considered. Working solely from the transcript, it is unclear that the ALJ did mistakenly believe Lara intended to amend the onset date, and clear that any such error is harmless here.

## V. CONCLUSION

As detailed above, Lara has not shown that the ALJ's decision is unsupported by substantial evidence or the result of incorrect legal standards to a harmful degree. Therefore, it is **ORDERED** that the decision of the Commissioner is **AFFIRMED** and Lara's complaint is **DISMISSED**. Judgment consistent with this opinion to issue on even date.

**SO ORDERED.**

Dated March 27, 2018.

_____
E. SCOTT FROST
**UNITED STATES MAGISTRATE JUDGE**